UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One Black Apple iPhone with No Case and an Unknown Lock Screen | )<br>)<br>)  Case No.   26mj00518<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1344(2), 1957 | Bank fraud, money laundering |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Michael D. Chinn*
Applicant's signature

Michael Chinn, FBI Task Force Officer
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date:   01/30/2026

Judge's signature

City and state:   San Diego, California            Brian J. White, Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Michael Chinn, being duly sworn, depose and state as follows:

## OVERVIEW

1. On January 14, 2026, the Honorable Karen S. Crawford, United States Magistrate Judge, signed a sealed complaint (26-MJ-00174) charging GUERRA with one count of bank fraud in violation of 18 U.S.C. § 1344(2), one count of money laundering in violation of 18 U.S.C. § 1957, and criminal forfeiture, and issued a warrant for GUERRA's arrest.

2. On January 27, 2026, GUERRA was arrested in the Luxor Hotel & Casino in Las Vegas, Nevada. At the time of his arrest, GUERRA was in possession of an Apple iPhone in a blue "Dragon Ball Z" phone case, as further described in Attachment A-1 ("Target Device 1"). Additionally, GUERRA provided verbal consent to search his camouflage backpack, which contained two additional cellular phones. Specifically, agents asked GUERRA if the backpack belonged to him, and GUERRA said it was his; when agents asked if they could search the backpack, he answered along the lines of "I don't give a shit." During the search of the backpack, agents located and seized two additional cellular telephones: one black Apple iPhone with no case but a lock screen displaying "Lilo" from the "Lilo & Stitch" franchise, as further described in Attachment A-2 ("Target Device 2"), and a black Apple iPhone with no case and an unknown lock screen, as further described in Attachment A-3 ("Target Device 3").

3. The same day, GUERRA signed a Rule 5 waiver form and indicated his preference to make his initial appearance before a judge in the Southern District of California. On January 28, 2026, Federal Bureau of Investigation ("FBI") and San Diego Police Department ("SDPD") personnel transferred GUERRA and Target Device 1, Target Device 2, and Target Device 3 (collectively the "Target Devices) from Las Vegas to San Diego, California. I seek warrants authorizing the search of the Target Devices, which are currently located at the San Diego Police Department Headquarters, for data

beginning on May 1, 2025 (the month GUERRA's rideshare account was created) through January 27, 2026 (the date of GUERRA's arrest).

## AFFIANT

4. I am a peace officer employed by SDPD and have been so employed for approximately 16 years. During this time, I have worked a variety of patrol and investigative assignments. My investigative assignments include the investigation of crimes against persons and property at Mid-City Division for 16 months, Economic Crimes Unit where I was assigned for more than six years. I am currently assigned to the Criminal Intelligence Unit, and I am a Task Force Officer assigned to the FBI's Elder Justice Task Force. During these assignments, I have investigated crimes such as thefts, forgery, identity theft, elder abuse, money laundering and wire fraud.

5. During my career I have spoken with numerous victims, witnesses, and suspects of said crimes, as well as other detectives who investigate these types of crimes. From these discussions I have learned the methods suspects used to commit the crimes, as well as the methods they employ to hide their actions from law enforcement. I have also learned that individuals involved in criminal activity will frequently use telephones, cellular phones, electronic mail, and social media accounts to further their criminal activity by communicating with other suspects, witnesses, and victims. I have participated in investigations which utilized telephone records to effectively identify subjects and gather evidence. I have also participated in investigations that have included the search and seizure of cellular telephones and/or the tracking of cellular telephones. I have become versed in the methods in which criminals utilize wire communications to facilitate their illegal activities through the course of these investigations.

6. All the conclusions set forth in this Affidavit are based on my training and experience, conversations with other agents, and my knowledge of the facts of this investigation. All of the dates, times, and amounts listed in this affidavit are approximate. This affidavit sets forth only the facts necessary to support the issuance of the requested

warrants; it does not include each and every fact known to me concerning this investigation. This investigation is ongoing.

## STATEMENT OF PROBABLE CAUSE

### The Complaint

7. As noted above, the Honorable Karen S. Crawford, United States Magistrate Judge, signed a Complaint (26-MJ-00174) charging GUERRA with one count of bank fraud in violation of 18 U.S.C. §§ 1344(2), one count of Money laundering in violation of 18 U.S.C. § 1957, and criminal forfeiture. The bank fraud charge is based on GUERRA aiding and abetting a bank impersonation scam—further described in both the Complaint and the following paragraphs—in San Diego on October 28, 2025. The money laundering charge is based on GUERRA purchasing a 2021 Tesla Model 3 with a $24,000.00 cash payment in Las Vegas on November 12, 2025.

8. A **bank impersonation scam** is a sophisticated scam carried out by fraudsters who contact victims and pretend to be a bank employee with the victim's bank. These calls often appear to be legitimate as the fraudsters routinely use spoofing technology to make it appear that the call is coming from the victim's bank. The fake bank employee then informs the victim that there is ongoing fraud on the victim's bank account and that immediate action by the victim is required. The fraudsters then trick the victims into transferring funds to the fraudster in a variety of ways, including (1) convince the victim to transfer funds to other bank accounts controlled by the fraudster or a coconspirator; (2) convince the victim to withdraw funds and provide those funds to a purported bank employee for safekeeping; or (3) convince the victim to provide their ATM or credit card to a purported bank employee so that another ATM or credit card can be reissued. The victims' funds are then quickly depleted by the fraudster or coconspirators. As outlined below, fraudsters involved in bank impersonation scams often utilize commercial ride-share courier services to pick up the cash and/or debit and credit cards from the victim and deliver those items to the fraudster and coconspirators.

9. A **commercial ride-share courier service** is a transportation or delivery network company that, for compensation, facilitates on-demand transportation or courier services by matching customers with independent drivers through a digital platform downloaded to cellular telephones. Fraudsters use commercial ride-share courier services to pick up fraud funds directly from the victim as these services offer convenience, anonymity, and mitigates the risk of dealing directly with the victim, all of which make the fraud scheme more difficult to detect and investigate. The fraudsters conducting the bank impersonation scam have used the services of both Company A and Company B to facilitate the fraud scheme. Both Company A and Company B provide commercial ride-share courier services throughout the United States, including in the Southern District of California.

### The Target Devices

10. As detailed in paragraph 2, supra, GUERRA had Target Device 1 on his person, and Target Device 2 and Target Device 3 were in his backpack, at the time of his arrest on January 27, 2026. After seizing the Target Devices, the FBI and SDPD transferred GUERRA and the Target Devices from Las Vegas to SDPD Headquarters. The Target Devices were placed in airplane mode.

11. As outlined below, I believe that GUERRA used the Target Devices in furtherance of the charged and other bank fraud offenses in violation of 18 U.S.C. §§ 1344(2).

### GUERRA's Ride Share Account

12. A review of Company A's records confirmed that GUERRA has a ride-share account named "Jaab MB." GUERRA's Florida driver license card was uploaded to the ride-share account, which included a photograph of GUERRA and listed GUERRA's date of birth and an address in Miramar, Florida. Company A's records dated November 17, 2025, revealed that the account had been associated to two separate phone numbers and was used by at least two different iPhone models. Based on Company A's records

demonstrating that GUERRA's rideshare account was associated to multiple cellular telephone numbers and cellular devices, I believe that GUERRA used multiple cellular telephones and telephone numbers to facilitate that bank impersonation scheme and that there will be evidence of such on the Target Devices.

13. A review of Company A's records confirmed that GUERRA has a ride-share account named "Jaab MB." GUERRA's Florida driver license card was uploaded to the Jaab MB ride-share account, which included a photograph of GUERRA and listed GUERRA's date of birth and an address in Miramar, Florida.

14. Company A's records revealed that on October 26, 2025, GUERRA's "Jaab MB" account ordered a ride with a pickup location in Katy, Texas and a drop off location at the William P. Hobby Airport located in Houston, Texas. Later that same day, GUERRA's account ordered a ride with a pickup location at the San Diego International Airport and a drop off location at a Marriott hotel located at 8757 Rio San Diego Drive, San Diego, California ("the Marriott hotel"), which is in the Southern District of California.

15. Business records from Marriott confirmed that GUERRA checked into the Marriott hotel on October 26, 2025, and paid for a one-night stay with points from a Marriott account in his name. There was $50.06 in fees associated with this reservation, which were paid for using a credit card ending in #7592. On October 27, 2025, another reservation was made at the same hotel in GUERRA's name with a check-out date of November 2, 2025; this reservation was paid for with a credit card ending in #7592. Additionally, one additional room was rented under GUERRA'S name from October 30, 2025, to November 2, 2025. This room was paid for using a credit card ending in #2157. The Marriott hotel's surveillance cameras captured GUERRA checking into the hotel on October 26 with three other unidentified individual, including the following images showing GUERRA:




16. Based on Company A's records, Marriott's business records and surveillance footage, I believe GUERRA traveled from Houston to San Diego on October 26, 2025, stayed at the Marriott hotel, and used his "Jaab MB" ride-share account to receive money from multiple victims of a bank impersonation scam in San Diego.

17. Company A's records revealed that on October 27, 2025, GUERRA's ride-share account ordered a ride with a pickup location at the Marriott hotel and a drop off location at a Walmart located at 3382 Murphy Canyon Road in San Diego. Surveillance footage at the Walmart confirmed that GUERRA arrived at the Walmart with an unidentified female on October 27, 2025.

**Victim 1**

18. Victim 1 is a 28-year-old resident of Chula Vista, California that fell victim to a bank impersonation scam resulting in a loss of $13,000.00. Victim 1 reported that on October 28, 2025, he received a phone call from an unknown number and spoke to a male subject who claimed to be a Wells Fargo associate. Victim 1 had a bank account with Wells Fargo. The fake Wells Fargo associate informed Victim 1 that there was a recent fraud attempt on his bank account and advised Victim 1 to withdrawal $13,000.00 from

his bank account so that his funds could be safeguarded. Victim 1 was transferred between an unknown male and female subject during his interactions with the subjects purporting to be Wells Fargo associates.

19. Victim 1 did as he was instructed and went to a Wells Fargo branch in San Diego, California and withdrew a total of $13,000.00. Victim 1 was then directed to take the $13,000.00 to a Jack-In-The-Box located at 1340 Rosecrans Street in San Diego, where another associate would pick up the money. As directed, Victim 1 went to the Jack-In-The-Box and provided the funds to an individual that arrived in a black Ford Explorer. Victim 1 later contacted an actual Wells Fargo bank employees who informed Victim 1 that he had been scammed and advised Victim 1 to file a police report.

20. Company A's records confirmed that on October 28, 2025, GUERRA's ride-share account ordered a pickup at the Jack-In-The-Box located at 1340 Rosecrans Street with a drop off location at 8660 Rio San Diego Drive in San Diego. The drop off location is an address associated to a Navy Federal Credit Union (NFCU) branch next to the Marriott hotel. At approximately 2:45 p.m., GUERRA used Company A's messaging service to communicate with the ride-share driver and sent the following messages: "My brother is at jack in box – He can't bring me my id and passport – So I told him to give you my stuff – Too bring – Cause I'm at the bank and I need my id and stuff for them to assist me[.]"

21. Company A's records confirmed that the ride arrived at the drop off location on October 28, 2025, at 3:25 p.m. Marriott surveillance footage captured GUERRA departing the hotel at approximately 3:20 p.m. and walking west towards the NFCU branch identified as the drop off location in Company A's records. At approximately 3:39 p.m., GUERRA was again captured on surveillance footage returning to the Marriott hotel, Surveillance footage captured GUERRA holding two cellular telephones as he returned to the hotel, as shown in the following images:



22.     Based on reporting by Victim 1, Company A's records, and surveillance footage of GUERRA departing and returning to the Marriott hotel that corresponds with the delivery of Victim 1's funds, I believe that GUERRA coordinated with Company A's driver to pick up and deliver Victim 1's funds to GUERRA as part of the bank impersonation scam.

**The Jaab MB Account and Target Device 1**

23.     A review of Company A's records for the "Jaab MB" account suggests additional bank fraud in cities throughout the United States. For example, as indicated above, Company A maintained messaging between its drivers and the user of its services. Between July 2025 and November 2025, the Jaab MB account sent 400 outgoing messages to drivers, including:

    a.     On July 31, 2025, the user asked the driver not to cancel the ride and said they are two hours away from the meeting point, that they will give "a big tip for the drive," "I have cash as well I can give you," and "I'll give you the money once I see you."

    b.     On September 3, 2025, the user wrote to a driver "this is for a package

8

            from by brother" and "I will tip u $200 for doing this for me."

c. On September 16, 2025, the user wrote "My uncle won't be getting in the car with you," "He will be giving you a package for me," and "I will give u big tip for doing this favor for me."

d. On September 21, 2025, the user wrote "I just need you to pick up the package thanks," "My grandma can't get in the car too bring it" "so she gone give you my stuff," and "I'll tip you extra."

e. Three hours later, on September 21, 2025, the user wrote "My grandpa can't come with you so he gone give you package to bring too me" and "I'll tip you more as well."

f. Another 1.5 hour hours later, on September 21, 2025, the user wrote "My grandma can't come but I left my package at her house" "She is going too give you my stuff."

g. On October 2, 2025, the user wrote "Hello I work by Wendy's I left my id at Walgreens" and "My uncle is going too give you my package too bring too me cause I can't leave."

h. On October 28, 2025, contemporaneous with the pick up of Victim 1's money at a Jack in the Box, the user wrote "My brother is at jack in box," "He can't bring me my id and passport," "So I told him to give you my stuff," "Too bring it," "Cause I'm at the bank and I need my id and stuff for them to assist me," and "I told him just give it too you too bring too me."

i. On November 4, 2025, contemporaneous with the pickup of Victim 3's money at a Walgreens (as described in the Complaint), the user wrote ": "My brother has my birth certificate and social security card he's not going to get in the car he has it packed up from me can u please bring it to me[?]"  Notably, that pickup was delivered to a Chevron

9

located on Park Boulevard in San Diego, and surveillance footage from the Chevron shows GUERRA, first with a cell phone in his hand and later retrieving an envelope from the front passenger door of a car.

    j.    On November 11, 2025, the user wrote "Hello my grandma has my id and social security card," "She scared too drive on highway," and "I told her I'll see if uber can deliver my package to me."

24. On January 15, 2026, the Honorable Karen S. Crawford, United States Magistrate Judge, Southern District of California, signed a court order (26MJ0223) authorizing Verizon to disclose to the FBI historic and prospective CSLI for the phone number assigned Target Device 1, which was linked to GUERRA through records from a car dealership at which GUERRA purchased a 2021 Tesla Model 3 (the "Tesla") for $24,000.00 cash in Las Vegas, NV on November 12, 2025.

25. On approximately January 17, 2026, the FBI began receiving prospective CSLI for Target Device 1. Between the dates of January 17, 2026, and January 27, 2026, Target Device 1 was geolocated in multiple cities, including Portland, Oregon; Salt Lake City, Utah; and Las Vegas, Nevada. The data for Target Device 1 was used to locate and arrest GUERRA on January 27, 2026. Based on a review of Company A's records, my training and experience, as well as my knowledge of this specific case, I believe that GUERRA's travel patterns leading up to his arrest on January 27, 2026 are consistent with continued participation in the fraud scheme and that evidence items identified in Attachment B will be located on the Target Devices.

26. Additionally, prior to the Target Devices being placed in airplane mode and secured at SDPD Headquarters, investigators observed Company A notifications pop up on the screen of Target Device 1. Furthermore, an inventory of the contents GUERRA's wallet prior to being logged into evidence revealed a bank card in the name of an individual other than GUERRA. These facts further buttress my belief that evidence items identified in Attachment B will be located on the Target Devices.

27. Based upon my experience and training, discussions with other federal agents, and all the information set forth in this Affidavit, I submit there is probable cause to believe the Target Devices contains evidence of violations of 18 U.S.C. §§ 1344 (bank fraud) and 1957 (money laundering), including information:

    a. Tending to identify the user of, or persons with control over or access to, the Target Devices;

    b. Tending to show GUERRA's possession of or access to bank customer information and receipts of banking activity;

    c. Tending to show GUERRA's contact or communication with bank customers;

    d. Tending to corroborate GUERRA's use of Company A and Company B's services in furtherance his bank fraud schemes or conspiracies;

    e. Tending to identify assets purchased by GUERRA with criminally derived proceeds that would be subject to seizure and forfeiture;

    f. Tending to identify additional co-conspirators, criminal associates, or others involved in GUERRA's bank fraud schemes or conspiracies; or

    g. Tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence described in any of the preceding paragraphs.

28. I request permission to search the Target Devices for such records and data beginning on May 1, 2025 (the month GUERRA's rideshare account was created) through January 27, 2026 (the date of GUERRA's arrest).

29. Based upon my training, experience, and consultations with law enforcement officers federal agents, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts,

voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. Further, relevant information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone.

30. Based on my training and experience, I am aware that coconspirators often communicate with each other over a variety of media, including emails, text messages, and app-based communications. I am also aware that much of this evidence can be found on their phones. I am also aware that in addition to communications, a cellular phone can contain a variety of other forms of relevant evidence, such as videos, pictures, audio recordings, internet searches, stored documents, and other materials that can be created and saved on a phone. In this case, I am aware that GUERRA has used multiple cellular telephones in the commission of the charged criminal offenses based on Company A's records, purchase documents for the Tesla, and surveillance footage. Accordingly, believe that evidence items identified in Attachment B will be located on the Target Devices and seek authority to search the Target Devices as further described below.

## METHODOLOGY

31. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

32. Following the issuance of the warrants, I will collect the subject Target Devices and subject them to analysis. All forensic analysis of the data contained within the Target Devices and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

33. Based on the foregoing, identifying and extracting data subject to seizure pursuant to the warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrants are signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

34. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

35. Based upon the facts described above, I respectfully submit that GUERRA and others engaged in bank fraud and money laundering schemes, and that there is probable cause to believe the Target Devices contains evidence of violations of 18 U.S.C. §§ 1344 (bank fraud) and 1957 (money laundering), and is property designed for use,

intended for use, or used in committing a crime. Accordingly, I respectfully request that the Court issue a warrant to search the Target Devices, as described in Attachments A-1, A-2, and A-3, for evidence of those offenses, as more specifically described in Attachment B hereto.

                                  Respectfully submitted,

*Michael D. Chinn*
_____
MICHAEL CHINN
FBI Task Force Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, on January 30, 2026:

_____
HON. BRIAN J. WHITE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-3

The following property is to be searched: one black Apple iPhone with no case and an unknown lock screen ("Target Device 3").



Target Device 3 is currently in the possession of the San Diego Police Department and located at the San Diego Police Department Headquarters in San Diego, California.

# ATTACHMENT B

Authorization to search the cellular telephone described in Attachments A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **May 1, 2025 through January 27, 2026**:

a. Tending to identify the user of, or persons with control over or access to, the Target Devices;
b. Tending to show GUERRA's possession of or access to bank customer information and receipts of banking activity;
c. Tending to show GUERRA's contact or communication with bank customers;
d. Tending to corroborate GUERRA's use of Company A and Company B's services in furtherance his bank fraud schemes or conspiracies;
e. Tending to identify assets purchased by GUERRA with criminally derived proceeds that would be subject to seizure and forfeiture;
f. Tending to identify additional co-conspirators, criminal associates, or others involved in GUERRA's bank fraud schemes or conspiracies; or
g. Tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence described in any of the preceding paragraphs.

which are evidence of violations of Title 18, United States Code, Sections 1344(2) (bank fraud) and 1957 (money laundering).